IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CARLTON L. CHANEY**

          **Petitioner,**         Civil No. 15-cv-00211-DRH-CJP

vs.

**JAMES CROSS, JR.,**

          **Respondent.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

This matter is now before the Court on Carlton L. Chaney's petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1).

In 1997, separate juries convicted Mr. Chaney (Petitioner) of armed robbery, carjacking, two counts of using a firearm while committing a crime of violence, and possessing a firearm as a felon. *Chaney v. United States*, 101 F. App'x 160, 162 (7th Cir. 2004). He received a sentence of 430 months: "concurrent terms of 130 months for armed bank robbery, 130 months for carjacking, and 120 months for possession of a firearm by a felon, plus consecutive terms of 60 months and 240 months for using a firearm during the bank robbery and carjacking." *Id.*

1

Petitioner attacks his conviction for use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), as it relates to the armed robbery. He argues he is entitled to habeas relief pursuant to *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

**Relevant Facts and Procedural History**

In its preliminary review of the petition, this Court summarized the facts of Petitioner's case as follows:

> On April 18, 1997, at approximately 9:20 A.M., three masked African–American males robbed the NBD Bank in Indianapolis, Indiana. One robber stood in the lobby area, waived a gun, and told everyone in the bank to keep their hands up. The other two robbers rushed behind the teller area, and one of those two pointed a gun at a teller and dumped cash from the drawers into a pillowcase. The robbers then ran out of the bank, jumped into a dark blue Cadillac that had been stolen earlier that day, and sped away.
>
> Two civilians witnessed the bank robbery and earnestly gave chase. The first, James Nulf, was the husband of one of the bank employees. He followed the robbers until they stopped on Inland Drive and watched as the robbers stood outside the Cadillac and talked to each other. Nulf then saw one of the robbers walk east on Inland Drive, while the other two drove away in the Cadillac. The second witness, Donna Dauby, was driving by the bank when she saw the robbers leave the bank and speed off. Like Nulf, she also followed the robbers to Inland Drive. As she drove towards the Cadillac, a Chevrolet Suburban drove toward her, veered around the Cadillac, and sideswiped the driver's side of Dauby's vehicle. The Suburban then careened off of Dauby's vehicle and crashed into a nearby house.
>
> By the time police arrived at the scene, the Suburban was abandoned, but police did find a black mask in the vehicle, along with $16,890 stuffed in a pink and white pillowcase, an Indiana identification card for "Jesse James" with Carlton Chaney's picture, and various car repair documents (some bearing the name "Troy Smith"). Six fingerprints, later identified as Chaney's, were on the

2

inside of the Suburban. As for the stolen Cadillac, it was recovered in a nearby apartment complex: its rear window was broken and covered with duct tape, and the ends of the duct tape matched the end of a roll found in the Suburban.

At 9:30 A.M. on the same day, an unmasked African–American male entered the home of Mary and William Howe, threatened them with a gun, and demanded the keys to their car. The Howe's residence was located one street away from the abandoned Suburban. The robber took the Howe's car and drove off. While Mr. Howe could not identify the assailant, Mrs. Howe ultimately identified Chaney as the man who entered the Howes' home.

Police arrested Chaney on May 2, 1997, as he left an apartment that he had leased in the name of Michael Troy Smith. During the arrest, Chaney fled from the police in his car, pointed his gun at officers when he was stopped, and then fled again. He was ultimately captured when he lost control of his vehicle. When arrested, Chaney was carrying an Indiana driver's license in the name of Troy Smith (with his picture on it), and police found a handgun on the floor of his vehicle. Chaney was charged with bank robbery, carjacking, using and carrying a firearm in relation to a bank robbery, using and carrying a firearm in relation to carjacking, and two counts of unlawful possession of a firearm by a felon.

*Chaney v. Cross*, 2015 WL 1228918, at *1–2 (S.D. Ill. Mar. 16, 2015) (internal citations omitted) (Doc. 3).

At trial, Petitioner's jury received an aiding and abetting instruction, which provided a person is guilty of a crime if he "knowingly aids, abets, counsels, commands, induces or procures the commission of a crime." (Doc. 1, p. 28). The instruction further explained, "However, that person must knowingly associate himself with the criminal venture, participate in it, and try to make it succeed." *Id.* The jury returned a general verdict form, convicting Petitioner of all counts. *Chaney*, at *2.

3

Petitioner appealed his conviction and the Seventh Circuit rejected the challenge, citing the "overwhelming" evidence against Petitioner:

> Chaney's identification and fingerprints were found in a car containing the pillowcase full of cash from the bank robbery and a mask identified by a teller as the one worn by the leader of the robbers. The car contained repair records under Chaney's "Troy Smith" alias, suggesting that it was Chaney's car. Mrs. Howe identified Chaney as the man who took the Howes' car at gunpoint. When the police later attempted to arrest Chaney, he fled from them and threatened them with a gun. Witnesses testified that Chaney's gun was similar to the one used in the bank robbery and the carjacking.

*United States. v. Chaney,* 165 F.3d 33, at *4 (7th Cir. Oct. 23, 1998). Petitioner then unsuccessfully sought relief via two § 2255 motions and several § 2241 petitions. *See, e.g.*, *Chaney v. Cross,* 2014 WL 1041036, at *1 (S.D.Ill. Mar. 18, 2014); *Chaney v. United States,* 2008 WL 818565, at *1 (S.D.Ill. Mar. 21, 2008); *Chaney v. O'Brien,* 2007 WL 1189641, at *1 (W.D.Va. Apr. 23, 2007); *Chaney v. O'Brien,* 2006 WL 4595798, at *1 (W.D.Va. Mar. 7, 2006).

### Applicable Law

**1.  Law Applicable to § 2241 Petition**

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence. See, *Valona v. United States*, 138 F.3d 693, 694 (7th Cir.1998).

A federally convicted person may challenge his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. Indeed, a § 2255 motion is ordinarily the "exclusive means for a federal

4

prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). The statute generally limits a prisoner to *one* challenge of his conviction and sentence under § 2255. A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

It is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a § 2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). See, *United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir.2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998)

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a

constitutional case. Secondly, he must show that the decision could not have been invoked in the first § 2255 motion *and* applies retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). See also, *Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

## 2. *Rosemond v. United States*

Justus Rosemond was convicted of violating § 924(c) for aiding and abetting the use of a firearm during the commission of a drug trafficking crime. *Rosemond v. United States*, 134 S. Ct. 1240, 1241 (2014). The trial court refused Rosemond's proposed jury instruction, which required the jury to find Rosemond "acted intentionally to facilitate or encourage the firearm's use," rather than just the predicate drug offense. *Id*. On direct appeal, Rosemond argued the court's aiding and abetting instructions were erroneous. *Id.* The Tenth Circuit rejected his argument, and the Supreme Court granted certiorari "to resolve the Circuit conflict over what it takes to aid and abet a § 924(c) offense." *Id.* at 1245.

18 U.S.C. § 2(a) provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense is "punishable as a principal." In *Rosemond*, the Supreme Court noted the long-standing rule that "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at

1245.  The question before the Court was "how those two requirements – affirmative act and intent – apply in a prosecution for aiding and abetting a § 924(c) offense."  *Id.*

In general, a person can be convicted of aiding and abetting an offense without proof that he took part in every element of the offense.  *Id.* at 1246.  Thus, a person can aid and abet a violation of § 924(c) by acting to bring about either the drug trafficking offense (as in *Rosemond*), or the use of a firearm; it is not necessary that he physically participate in both.  *Id.* at 1247.  "In helping to bring about one part of the offense (whether trafficking drugs or using a gun), he necessarily helped to complete the whole.  And that ends the analysis as to his conduct."  *Id*.

The government must show more, however, than physical participation in one or more elements of the violation of § 924(c).  The Supreme Court described § 924(c) as establishing a "combination crime," meaning that it "punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm."  *Id.* at 1248.  Accordingly, "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime."  *Id.*  In other words, the evidence must establish the defendant intended to bring about the "illegal scheme in its entirety – including its use of a firearm."  *Id.* at 1249.

The Supreme Court noted it had previously found the intent requirement for aiding and abetting "satisfied when a person actively participates in a criminal

7

venture with full knowledge of the circumstances constituting the charged offense." *Id.* at 1248-49. The Court explained, "The same principle holds here: An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." *Id.* at 1249. The Court then stated,

> For all that to be true, though, the § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. . . . For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away.

*Id.* at 1249-50.

The Supreme Court went on to hold that the district court's jury instruction was erroneous because it did not require the jury to find Rosemond had "advance knowledge" that a firearm would be present. *Id.* at 1251.

## **Analysis**

Petitioner contends the Government provided insufficient evidence to prove he actually used a gun during the robbery. According to Petitioner, he is therefore entitled to habeas relief because the aiding and abetting jury instruction was deficient in light of *Rosemond*, as it did not require a finding Petitioner had

8

"advance knowledge" his confederates would use a firearm. He also argues his theory of defense at trial would have been significantly different based on *Rosemond*. The initial inquiry, however, is whether Petitioner may properly assert these arguments under § 2255's savings clause.

A federal prisoner challenging the legality of his sentence must generally bring his claims in a motion under § 2255. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). As mentioned above, Petitioner has filed previous § 2255 motions and he does not meet the requirements to bring a successive petition under § 2255(h). However, § 2255 contains a "savings clause" that permits Petitioner to bring a claim under § 2241 if § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).

To determine whether the savings clause applies, the Seventh Circuit employs the aforementioned three-part test established in *Davenport*, which requires (1) the petitioner relies on a statutory-interpretation case; (2) the new rule applies retroactively on collateral review and could not have been invoked in the petitioner's previous proceedings; and (3) the error amounts to a miscarriage of justice. *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016); *In re Davenport*, 147 F.3d 605, 610–11 (7th Cir. 1998).

Respondent agrees, and the Seventh Circuit has already determined, that *Rosemond* is a case of statutory construction and is retroactive. *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016). *Davenport's* second condition, however, also requires "prior unavailability of the challenge." *Id.* Respondent

argues Petitioner cannot establish unavailability because Petitioner could have asserted the rule in *Rosemond* in his first § 2255 motion.

Respondent relies on the Seventh Circuit case *Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016), whose facts are very similar to the case at bar. There, Darwin Montana was convicted of using a firearm while committing a crime of violence in violation of § 924(c) for aiding and abetting a bank robbery in which his accomplice used a firearm. *Montana*, 829 F.3d at 776. Montana subsequently "filed several unsuccessful postconviction petitions, including a motion to vacate under 28 U.S.C. § 2255." *Id.*

Following the Supreme Court's decision in *Rosemond*, Montana filed a petition under § 2241. *Id.* He argued the trial court's jury instructions erroneously permitted a conviction without requiring a finding he had actual, advance knowledge his accomplice would use a firearm. *Id.* at 778. The district court dismissed his petition, finding Montana could not meet the requirements of the savings clause. *Id.* at 778-79. Montana appealed. *Id.* at 779.

On review, the vitality of Montana's claim turned on whether *Rosemond* satisfied the unavailability requirement of the second prong of the *Davenport* test. The Seventh Circuit explained, "[T]he second prong is satisfied if it would have been futile to raise a claim in the petitioner's original section 2255 motion, as the law was squarely against him." *Id.* at 784 (quoting *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (internal quotations omitted).

The court looked to *United States v. Woods*, 148 F.3d 843 (7th Cir. 1998)

and *United States v. Taylor*, 226 F.3d 593 (7th Cir. 2000) to determine whether the circuit's law was "squarely against" Montana's position. *Id.* at 784-85. The Seventh Circuit noted that neither case established constructive knowledge was adequate to sustain a conviction and, thus, "it certainly was not foreclosed to Mr. Montana to argue that the Government had to prove that he had actual knowledge of the presence of the firearm . . . ." *Id.* at 785. In other words, the rule in *Rosemond* was not previously unavailable for purposes of the *Davenport* test. The Seventh Circuit affirmed the district court's dismissal. *Id.*

Here, Petitioner does not distinguish *Montana* from the facts of his case. Instead, he argues the Seventh Circuit's analysis in *Montana* was wrong. Petitioner's argument is futile.

This Court must abide by the doctrine of stare decisis, which provides that "decisions of a superior court in a unitary system bind the inferior courts." *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987). A district court may depart from precedent only if it is "powerfully convinced" the circuit court in which it sits would "overrule [the precedent] at the first opportunity." *Id.* This is generally established using subsequent case law. *See Olson v. Paine*, 806 F.2d 731, 734 (7th Cir. 1986) (a district court cannot stray from precedent unless a subsequent decision makes it "almost certain" the higher court would reverse its previous position "if given a chance to do so.").

Petitioner does not set forth a sufficient foundation for declining to follow *Montana*. He baselessly asserts *Montana* defeats all § 2241 motions premised on

11

a change in the law and contends pre-*Rosemond* case law did, in fact, foreclose any argument that the Government had to prove actual, advance knowledge of a firearm. Petitioner's objections to *Montana*, however, are misplaced. He does not assert the Seventh Circuit would overrule *Montana*, let alone point to any case law suggesting the same. Merely disagreeing with the Seventh Circuit is not an adequate basis to depart from precedent.

*Montana*, therefore, is binding on this Court and its rule must be applied here; Seventh Circuit case law prior to *Rosemond* did not prevent Petitioner from asserting the Government was required to prove actual, advance knowledge of the firearm in his initial § 2255 motion.

Petitioner argues in the alternative that he raised and preserved his claim surrounding the aiding and abetting jury instruction in his first § 2255 motion. The Court need not substantively address Petitioner's theory because, if successful, it would defeat his claim. If Petitioner raised the *Rosemond* argument in his initial § 2255, then he was obviously not foreclosed from invoking it, and it was not unavailable as required under *Davenport*. Petitioner has therefore failed to demonstrate § 2255 would provide an inadequate or ineffective remedy.

Nonetheless, even if Petitioner could proceed under the savings clause, he would not be entitled to habeas relief. The Government set forth sufficient evidence that Petitioner was involved in the robbery. The Seventh Circuit described the evidence against Petitioner as "so overwhelming." *United States v. Chaney*, 165 F.3d 33, at *4 (7th Cir. Oct. 23, 1998). Additionally, the

Government proved, at a minimum, that Petitioner had advance knowledge his cohorts would use a firearm in the robbery.

The robbery Petitioner was involved with included a plan to takeover the bank – i.e. it was not a mere demand-note robbery. *Davis v. Cross*, 863 F.3d 962, 965 (7th Cir. 2017). One robber stood in the lobby area, waiving a gun, while the other two robbers rushed behind the teller area. The Seventh Circuit has explained:

> [A] takeover robbery would be expected to involve arms. As we observed in [*United States v. Lawson*, 810 F.3d 1032, 1041 (7th Cir. 2016)], which involved the armed robbery of a post office and a partner drawing a gun upon entry, "[i]t is implausible that such a mid-day robbery plan would not have included a firearm designed to influence and threaten the employees or patrons that are sure to be there."

*Id.* at 965-66. Here, the robbers' "coordinated action" quells any reasonable doubt Petitioner had advanced knowledge of the gun. *Id.* at 965. If Petitioner was, indeed, not carrying a weapon, it is unlikely his decision to rush the teller area "was simply an on-the-fly adjustment once he 'discovered' [his cohort] was armed." *Id.*

Because Petitioner cannot properly assert his *Rosemond* arguments under § 2255's savings clause, and because a properly instructed jury would not have doubted Petitioner knew beforehand a firearm would be used in robbing the bank, his writ of habeas corpus is denied.

## **Conclusion**

Carlton L. Chaney's Petition for a Writ of Habeas Corpus Under 28 U.S.C. §

2241 (Doc. 1) is **DENIED**.  The Court **DISMISSES with prejudice** this cause of action.  Further, Petitioner's Motion to Appoint Counsel (Doc. 38) is **DENIED AS MOOT**.  The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

Judge Herndon
2017.11.15 15:05:39
-06'00'

**United States District Judge**

## Notice

If petitioner wishes to appeal the denial of his petition, he may file a notice of appeal with this court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(B). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

Petitioner is further advised that, if he intends to file a motion pursuant to Federal Rule of Civil Procedure 59(e), that motion must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the 60-day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.

It is not necessary for petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).